United States District Court
Southern District of Texas

**ENTERED**

April 07, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANDREW  MCCLENDON, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-00308 |
| | § | |
| LORIE  DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Andrew McClendon is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division and is currently incarcerated at the Estelle Unit in Huntsville, Texas.  Proceeding *pro se*, McClendon filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on October 9, 2019.  (D.E. 1).  Liberally construed, McClendon claims that he received ineffective assistance from trial counsel based on his failure to (1) raise or preserve a double jeopardy claim; (2) object to the introduction of irrelevant DNA evidence, related testimony, and the state's expert witness; and (3) adequately advise McClendon regarding whether he should accept a plea offer.  Respondent filed a motion for summary judgment on February 10, 2020, to which McClendon has not responded.   (D.E. 12).   As discussed further below, it is recommended that Respondent's motion for summary judgment (D.E. 12) be granted and McClendon's § 2254 petition be denied.  It is further recommended that a Certificate of Appealability ("COA") be denied.

## I.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because McClendon was convicted in Nueces County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.    BACKGROUND

### a.    Petition and Claims

In his § 2254 petition, McClendon raises several claims of ineffective assistance of trial counsel.  (D.E. 1 at 6-7).  First, McClendon contends that counsel was ineffective for failing to raise a double jeopardy claim because McClendon was re-indicted for aggravated assault and aggravated kidnapping after being acquitted on the basis of consent of a sexual assault that occurred at the same time.  (*Id.* at 6).  Second, McClendon asserts that counsel failed to object to evidence and testimony related to DNA, along with other expert testimony, which was irrelevant to the assault and kidnapping charges given that he admitted to having consensual sex with the victim. (*Id.*).  Third, McClendon contends that counsel failed to introduce copies of the aggravated sexual assault trial transcript into the record, particularly the judge's comments regarding consent, thereby failing to preserve a double jeopardy challenge on appeal.  (*Id.* at 7).  Finally, McClendon argues that he would have accepted a plea deal, but counsel inadequately explained the elements of the crimes and did not inform McClendon that his testimony in the earlier trial admitted to the elements of aggravated assault and aggravated kidnapping.  McClendon seeks to have his convictions set aside to renegotiate a plea deal or have a new trial.  (*Id.*).

2

Case 2:19-cv-00308   Document 14   Filed on 04/07/20 in TXSD   Page 3 of 20

**b.    State Court Records**

In December 2015, McClendon was charged in an indictment with one count of aggravated kidnapping, in violation of Tex. Penal Code § 20.04, and one count of aggravated assault, in violation of Tex. Penal Code § 22.02.  (D.E. 13-20 at 5-7).  As to the aggravated kidnapping charge, the indictment charged McClendon with intentionally and knowingly abducting the victim with, among other possibilities, intent to inflict bodily injury or by using or exhibiting a deadly weapon, namely, a knife.  (*Id.* at 5-6).  As to the aggravated assault charge, the indictment charged McClendon with intentionally and knowingly threatening imminent bodily harm to the victim by using or exhibiting a deadly weapon, namely, a knife, during the commission of the assault.  (*Id.* at 6).

At trial, counsel objected to testimony by nurse Carol MacLaughlin, arguing that: (1) her testimony was irrelevant to the charges in the instant indictment; (2) allowing her to testify would be more prejudicial than probative; and (3) her testimony could violate the order of expunction on sexual assault charge McClendon was acquitted of.  (D.E. 13-23 at 71-72).  The state responded that her testimony was relevant because she collected the DNA evidence, which helped establish the identity of the perpetrator.  (*Id.* at 72). Moreover, the state argued that there was other evidence of bodily injury, including a hickey and genital trauma, which helped establish the intent to cause bodily injury.  (*Id.* at 72-74).  The trial court overruled counsel's objection, but prohibited the state from mentioning the previous aggravated sexual assault charge.  (*Id.* at 73-74).

MacLaughlin testified that she was a forensic nurse who specialized in child abuse and sexual assault patients.  (*Id.* at 77-78).  Over counsel's objection, MacLaughlin read

3

her report of what the victim told her regarding the incident at the time of her exam. (*Id.* at 80-82). During the examination, MacLaughlin noted a bruise on the victim's neck and two areas of genital trauma. (*Id.* at 82). She also collected swabs of evidence for the police, including all areas that the victim indicated McClendon touched her. (*Id.* at 83).

Detective Lee Galloway testified that he collected DNA evidence from McClendon and another man, the victim's boyfriend, and further testified regarding the DNA testing process. (D.E. 13-24 at 38-42).

McClendon's testimony from the aggravated sexual assault trial was read into the record. (*Id.* at 67). McClendon testified that he approached the victim as she was walking to her car and asked her for a ride. (*Id.* at 70). He had a knife in his hand, and although he never pointed it at her or intended to hurt her, he "kind of knew that if I showed her a knife she might be scared." (*Id.*). The victim agreed to give him a ride and the two subsequently had sexual contact. (*Id.* at 71-118).

Cynthia Morales, a forensic scientist with the Texas Department of Public Safety, testified regarding the DNA testing process. (*Id.* at 118-24). She further stated that she conducted the DNA testing in this case, and McClendon could not be excluded as a contributor to four of the samples in two separate tests. (*Id.* at 129-32, 137-39). The DNA report was submitted as evidence. (D.E. 13-28 at 76-78).

Following Morales's testimony, trial counsel objected to the forthcoming testimony from Brenda Olson, the victim's sexual abuse counselor. (D.E. 13-24 at 148). The state responded that it was offering Olson as an expert witness regarding the victim's behavior on the night of the event and why she did not fight back against McClendon.

4

(*Id.* at 148-49).  The court overruled McClendon's objection to the extent the testimony was for educational purposes, but prohibited any questions regarding the victim's counseling details, subject to McClendon raising further objections.  (*Id.* at 149-51). Olson testified regarding why she believed the victim did not attempt to escape or fight back during the incident.  (*Id.* at 162-66).  Counsel raised several objections during this testimony.  (*Id.*).

Finally, the victim testified regarding what she experienced on the night of the incident.  (*Id.* at 174-205).  When she left work and began to walk to her car, McClendon started yelling at her.  (*Id.* at 179-80).  He asked if she had any change, and when the victim began to walk faster, she could hear the man running behind her.  (*Id.* at 181). When she turned around, McClendon was inches away from her and had a knife pointed at her stomach.  (*Id.* at 181-82).  He told her to unlock the car and then got in the backseat, although he then moved to the front passenger seat.  (*Id.* at 182-84).  He continued to point the knife in her direction throughout this time.  (*Id.* at 184). McClendon gave her directions about where to go as they were driving.  (*Id.*).  After directing her to park, McClendon stated that he just wanted to talk and indicated that he had been watching her earlier that night.  (*Id.* at 189-91).  The victim told him that she wanted to go home, but he responded "[n]ot just yet."  (*Id.* at 191).

The victim further testified that McClendon asked her to move the car further down the street, and the victim thought he was going to kill her.  (*Id.* at 192).  McClendon touched her knee, and she told him not to, but he did not care and said it had been a long time since he was with a woman.  The victim told him several times that she wanted to go

home, but he continued to respond "not yet." (*Id.*).  He told her to get in the back seat and take her clothes off, which she did.  (*Id.* at 193-94).  McClendon kissed her and sucked her neck, giving her bruises, and touched her genitals.  (*Id.* at 194-95).  The entire encounter lasted around two hours.  (*Id.* at 195-96).  McClendon asked the victim for cigarette money, stating that he would pay her back, and asked to be dropped off at a convenience store.  (*Id.* at 196).  The victim went along with what McClendon asked because she was afraid of what would happen if she did not.  (*Id.* at 198).  She called the police immediately after McClendon went into the convenience store.  (*Id.* at 199).

The jury found McClendon guilty on both charges.  (D.E. 13-26 at 31).  The court sentenced McClendon to 30 years' imprisonment on both charges, to run concurrently.  (D.E. 13-20 at 50; D.E. 13-27 at 28).

On direct appeal to the Texas Court of Criminal Appeals ("TCCA"), McClendon raised claims regarding a double jeopardy violation and trial court error in admitting testimony and evidence from the sexual assault trial despite the order of expunction.  (D.E. 13-3 at 1-2).  The TCCA affirmed his convictions.  (*Id.* at 2).  As to the double jeopardy claim, because counsel failed to raise the issue at trial, the TCCA applied a standard requiring any error to be evident on the face of the record.  (*Id.* at 4-6).  Because the indictment from the sexual assault trial was not in the record, the TCCA concluded that it could not determine how the offense was charged and, therefore, could not determine whether McClendon was subject to multiple prosecutions for the same offense.  (*Id.* at 5-6).  As to the expunction issue, the TCCA again determined that the record was insufficient because the order of expunction was not a part of it.  (*Id.* at 7-8).

6

McClendon subsequently filed a petition for discretionary review with the TCCA, but it was refused.  (D.E. 13-9 at 1).

Finally, McClendon filed an application for a writ of habeas corpus under Tex. Code of Crim. P. art. 11.07.  (D.E. 13-34 at 10-33).  Although split into seven different claims in the Article 11.07 application, McClendon raised the same ineffective-assistance claims as in his current petition.  (*Id.* at 15-28).  In relevant part, the evidence submitted in support of the Article 11.07 application included the following.

As read at the aggravated sexual assault trial,[1] McClendon was charged with four counts of aggravated sexual assault, including one count each for penetrating the victim's anus and sexual organ with a finger, penetrating the victim's sexual organ with his sexual organ, and contacting the victim's sexual organ with his mouth, all while using or exhibiting a knife during the same criminal episode.  (D.E. 13-30 at 9-11).  The proceedings were a bench trial, and the trial judge found McClendon not guilty on the basis of consent.  (D.E. 13-31 at 87-88).  The records of the aggravated sexual assault charges were subsequently expunged.  (D.E. 13-34 at 276-79).

McClendon stated in an affidavit that he would have taken a 19-year plea deal had trial counsel explained to him that his testimony at the aggravated sexual assault trial established the elements of the charges at the second trial.  (*Id.* at 384-85).

Trial counsel stated in an affidavit that his trial strategy was based on the victim's initial consent to allowing McClendon into her car, her consent to sexual activity, and

---

[1] The indictment itself for the aggravated sexual assault charges is not in the record.

7

McClendon's lack of intent to commit the aggravated kidnapping and aggravated assault offenses.  (*Id.* at 435).  Counsel noted that he did object to MacLaughlin's testimony, but that objection was overruled and it would have been damaging to trial strategy to continually object throughout her testimony.  Similarly, he noted that he objected to officer testimony about DNA and to Olson's testimony, but both were overruled.  As to introducing evidence from the previous trial, counsel stated that there was no reason to because the charges contained different elements and there was no viable double jeopardy claim.  Finally, counsel stated that he advised McClendon of all plea negotiations and of the impact of his prior testimony, but McClendon made it clear that he would not accept any plea offer because he was innocent.  (*Id.*).

The state trial court recommended that the Article 11.07 application be denied because McClendon had failed to show that counsel performed deficiently or that he suffered any prejudice from counsel's performance.  (*Id.* at 439).  A judge of the TCCA denied the application without a written order based on the trial court's findings.  (D.E. 13-33 at 1).

## III.  DISCUSSION

In the motion for summary judgment, Respondent first argues that McClendon has not shown that counsel was deficient in failing to raise a double jeopardy or collateral estoppel challenge because aggravated sexual assault requires proof of elements unique from both aggravated assault and aggravated kidnapping.  (D.E. 12 at 13-15).  Second, Respondent asserts that McClendon has not shown that counsel was deficient in failing to object to the DNA evidence and expert testimony because it was relevant to corroborate

the victim's testimony and establish the identity of the perpetrator.  (*Id.* at 16).  Third, Respondent argues that McClendon has not shown that counsel was deficient in failing to introduce the previous trial transcripts and preserve a double jeopardy challenge because, as previously discussed, there was no double jeopardy violation.  (*Id.* at 16-17).  Fourth, Respondent contends that McClendon's claim that counsel failed to adequately advise him is conclusory and contradicted by counsel's affidavit.  (*Id.* at 17-18).  Finally, as to all four claims, Respondent argues that even if there is some question about counsel's deficiency, McClendon cannot overcome the deference owed to the state court's denial of his claims.  (*Id.* at 18-19).

McClendon has not responded.

A § 2254 petition raising claims that were adjudicated on the merits in state court may not be granted unless the adjudication of the claim: (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of

9

the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).   Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).

 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted).  This is a difficult standard to meet.  *Id.* at 102-03.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.  Even summary rulings by state courts are afforded deference under § 2254(d), and in such cases, the relevant question is what arguments or theories could have supported the state court's decision.  *Id.* at 99, 102.  Review under § 2254(d)(1) is limited to the record that was before the state court.  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision.  *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).  A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006).  This deference extends not only to express findings of fact, but to

10

the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.* at 687-88.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690.

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in

the outcome." *Id.* at 695.

Federal court review of a state court's denial of an ineffective-assistance claim is "doubly deferential" because the court must give deference both to counsel's performance and to the state court's conclusion. *Cullen*, 563 U.S. at 190. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

### a.    Failure to Object on Double Jeopardy Grounds

The Fifth Amendment's Double Jeopardy clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause, applicable to states through the Fourteenth Amendment, prevents: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for an offense after a conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). To determine whether two charges qualify as the "same offense" for jeopardy purposes, courts apply the "same elements" test established in *Blockburger v. United States*, 284 U.S. 299 (1932). If an act or transaction is a violation of two statutory provisions, the relevant question is whether each provision requires proof of a fact that the other does not. *Blockburger*, 284 U.S. at 304. Collateral estoppel is a concept included under the Double Jeopardy clause that provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that

12

issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 442-43 (1970).

Under Texas law, a person commits aggravated sexual assault if, among other possibilities, he intentionally or knowingly causes penetration of the victim's sexual organ or anus by any means or causes the sexual organ of another to contact the mouth of another person, and uses or exhibits a deadly weapon in the course of the same criminal episode. Tex. Penal Code § 22.021. A person commits aggravated assault if, among other possibilities, he intentionally or knowingly threatens another with imminent bodily injury and uses or threatens to use a deadly weapon in the commission of this assault. Tex. Penal Code § 22.02. A person commits aggravated kidnapping if he, among other possibilities, intentionally and knowingly abducts another person with the intent to inflict bodily injury, or uses or exhibits a deadly weapon during the commission of the offense. Tex. Penal Code § 20.04.

Texas courts have concluded that, dependent on how each specific offense is charged, aggravated sexual assault and aggravated assault are not necessarily the same offense because each has a unique element. *Rogers v. State*, 305 S.W.3d 164, 170 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (concluding that aggravated assault is not a lesser-included offense of attempted aggravated sexual assault). The same is true of aggravated sexual assault and aggravated kidnapping. *See Ex parte Beeman*, 946 S.W.2d 616, 616 (Tex. App.—Fort Worth 1997, no writ) (finding no double jeopardy violation where a defendant was first acquitted of aggravated kidnapping and later convicted of aggravated sexual assault for the same incident).

13

Here, McClendon has not established that counsel performed deficiently because he did not have a viable claim of a double jeopardy violation or collateral estoppel. Under the *Blockburger* test, as alleged in the two indictments, each of the aggravated sexual assault, aggravated assault, and aggravated kidnapping charges had unique elements. The aggravated sexual assault was charged based on McClendon's penetration of the victim's anus and sexual organ, and his oral contact with the victim's sexual organ. (D.E. 13-30 at 9-11); Tex. Penal Code 22.021. None of these elements are required to prove aggravated assault or aggravated kidnapping and are, thus, unique. Further, as noted in *Rogers*, the deadly weapon standard is different in the aggravated sexual assault and aggravated assault statutes, and the charges here were consistent with this distinction. *See Rogers*, 305 S.W.3d at 170.

Next, in order to prove aggravated assault as charged, the state was required to prove that McClendon knowingly or intentionally threatened the victim with imminent bodily injury, an element unique from the aggravated sexual assault charge. (D.E. 13-20 at 6); Tex. Penal Code § 22.02. Finally, in order to prove the aggravated kidnapping charge, the state was required to prove that McClendon knowingly and intentionally abducted the victim, an element entirely unique to the kidnapping charge. (D.E. 13-20 at 5-6); Tex. Penal Code § 20.04. The aggravated kidnapping and aggravated assault charges required proof of a fact that the aggravated sexual assault charge did not, and thus were not the "same offense" as aggravated sexual assault for double jeopardy purposes. *Blockburger*, 284 U.S. at 304. Accordingly, because McClendon has not shown that he had a viable double jeopardy claim, he has not established that the state

14

court's conclusion that counsel's actions were not deficient was contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).  The same is true of McClendon's collateral estoppel claim.  Because each of the charges had unique elements, his acquittal on the aggravated sexual assault charges did not determine an issue of ultimate fact as to the other charges.  *Ashe*, 397 U.S. at 442-43.

### b.    Failure to Object to DNA Evidence and Expert Testimony

Under the Texas Rules of Evidence, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in the action.  Tex. Rule Evid. 401.  Relevant evidence is admissible unless otherwise prohibited by the federal or state constitution, a statute, another rule of evidence, or another rule prescribed under statutory authority.  Tex. Rule Evid. 402.  Otherwise admissible, relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice or needlessly presenting cumulative evidence.  Tex. R. Evid. 403.  Further,the Texas Rules of Evidence provide an exception to the hearsay rule for statements made for medical diagnosis or treatment. Tex. Rule Evid. 803(4).

Here, liberally construed, McClendon challenges three separate evidentiary issues from trial: (1) MacLaughlin's testimony about what the victim told her about the incident; (2) discussion of DNA evidence by several witnesses; and (3) Olson's expert testimony.  First, as to MacLaughlin, counsel raised an objection to her testimony and the trial court overruled it.  (D.E. 13-23 at 71-74).  Under Rule 803(4), MacLaughlin's testimony regarding what the victim told her during the examination was admissible as a

statement made for medical diagnosis or treatment.  Tex. Rule Evid. 803(4).  Further, the discussion of the victim's injuries was relevant to whether McClendon had the intent to inflict bodily injury under the aggravated kidnapping charge.  (*See* D.E. 13-20 at 5-6); Tex. Penal Code § 20.04.

As to the DNA evidence, it was relevant to establishing the identity of the perpetrator and, more importantly given that McClendon admitted to the sexual acts, eliminating the victim's boyfriend as the other potential source of the genital trauma. (*See* D.E. 13-24 at 38-42, 129-39).  Further, even if counsel should have objected to the DNA evidence as needlessly cumulative, McClendon has not established that he suffered prejudice where he admitted to the sexual acts.   *See Strickland*, 466 U.S. at 695 (discussing the prejudice standard).  Finally, Olson's expert testimony regarding why the victim did not fight back was relevant to corroborate the victim's testimony, particularly with regard to the abduction element of the aggravated kidnapping charge.   As trial counsel noted in his affidavit, the trial strategy, as in the aggravated sexual assault trial, was to contend that the victim agreed to allow McClendon into her car and give him a ride, and Olson's testimony was relevant to refuting this argument.  (*See* D.E. 13-34 at 435).

Accordingly, because all of the evidence and testimony that McClendon challenges was relevant and admissible, McClendon has not established that the state court's conclusion that counsel's actions were not deficient was contrary to, or an unreasonable application of, clearly established federal law.   28 U.S.C. § 2254(d). Alternatively, he has not established that the court's conclusion that he was not

prejudiced by counsel's performance was contrary to, or an unreasonable application of, clearly established federal law. *Id.*

### c.     Failure to Introduce Trial Transcripts

Here, the basis of McClendon's claim is that counsel's failure to introduce the trial transcripts from the aggravated sexual assault trial failed to preserve a double jeopardy challenge on appeal. (D.E. 1 at 7). However, as discussed above, this claim fails because McClendon does not have a viable double jeopardy claim, and therefore has not established that the state court's conclusion that counsel's actions were not deficient was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

### d.     Failure to Advise Regarding Plea Deal

Here, contrary to Respondent's argument, McClendon's claim that counsel failed to adequately advise him regarding a plea offer is not merely conclusory. During the Article 11.07 proceedings, McClendon, like counsel, submitted an affidavit addressing this claim. (D.E. 13-34 at 384-85, 435). However, in denying the Article 11.07 application, the state court implicitly made a factual finding in counsel's favor regarding the advice he gave to McClendon. This factual finding is presumed to be correct, and McClendon has not rebutted that presumption with any other evidence, much less clear and convincing evidence. *Garcia*, 454 F.3d at 444. Thus, McClendon has not established either that the state court's construction of the evidence was unreasonable or that the court's conclusion that counsel's advice was not ineffective was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

17

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although McClendon has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Here, it is recommended that the claims be dismissed on the merits.  Reasonable jurists would not find it debatable that McClendon's ineffective-assistance claims lack merit.  Therefore, it is further recommended that any request for a COA be denied.

## V.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 12) be GRANTED and McClendon's § 2254 petition be DENIED.  In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 7th day of April, 2020.

Julie K. Hampton
United States Magistrate Judge

19

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).